Filed 4/25/22  P. v. Cornejo CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSE CORNEJO,<br><br>    Defendant and Appellant. | C092109<br><br>(Super. Ct. No. 11F00582) |

Defendant Jesse Cornejo appeals from the trial court's order denying his petition for resentencing pursuant to Penal Code section 1170.95[1] and Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  Defendant argues the trial court incorrectly concluded he was ineligible for relief under former section 1170.95.  In supplemental briefing, defendant expands upon this argument, contending that the passage of Senate

---

[1]  Subsequent undesignated statutory references are to the Penal Code.

1

Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) requires reversal and remand for a hearing on whether he has made a prima facie case under amended section 1170.95, subdivision (c). We agree with the trial court that defendant was ineligible for relief as a matter of law. Under these circumstances, we conclude the failure to hold a hearing prior to denying defendant's petition, as now required by the passage of Senate Bill 775, is harmless as a matter of law. Accordingly, we affirm the trial court's order.

## BACKGROUND

A. *The Underlying Conviction*

For expediency, we will incorporate relevant information from the published opinion in defendant's prior appeal, *People v. Cornejo* (2016) 3 Cal.App.5th 36 (*Cornejo*):

"Deandre Ellison was shot to death as he drove into his driveway in the Del Paso Heights neighborhood of Sacramento. Four other men, including Latrele Neal, were also in Ellison's car. Before the car came to a stop in the driveway, an SUV driven by Jesse Cornejo slowly drove past Ellison's house; the SUV's front and backseat passengers, Adam Cornejo and Isaac Vasquez, opened fire on Ellison's car. Neal managed to return fire with Ellison's gun before the SUV drove away. About 20 bullets were exchanged between the vehicles. Bullets also struck Ellison's house. Ellison was the only casualty. After crashing the SUV while being pursued by law enforcement, Adam, Jesse, and Isaac were taken into custody a short time later. Each was a Norteño gang member. Isaac was 16 years old with a developmental disability; Adam and Jesse were 17 and 18 years old, respectively.

"Adam, Jesse, and Isaac were tried together and convicted by jury of one count of second degree murder (Pen. Code, § 187; Count One), four counts of attempted murder (§§ 664, 187; Counts Two, Three, Four, and Five), and one count of shooting at an inhabited dwelling (§ 246; Count Six). Jesse was also convicted of one count of driving in willful or wanton disregard for safety while fleeing from a pursuing peace officer.

2

(Veh. Code, § 2800.2, subd. (a); Count Seven.)  With respect to the murder, the jury found the offense was committed by means of shooting a firearm from a motor vehicle at another person outside the vehicle with the intent to inflict great bodily injury.  (§ 190, subd. (d).)  The jury also found the crimes were committed for the benefit of, at the direction of, or in association with, a criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members.  (§ 186.22, subd. (b).)  Various firearm enhancement allegations were also found to be true.  (Former §§ 12022.53, subds. (c), (d), (e)(1), 12022.5, subd. (a).)  The trial court sentenced Adam and Isaac to serve aggregate indeterminate prison terms of 120 years to life plus consecutive determinate terms of nine years four months.  Jesse was sentenced to serve the same indeterminate term of 120 years to life plus a consecutive determinate term of 10 years." (*Cornejo, supra*, 3 Cal.App.5th at pp. 41-42, fns. omitted.)

On appeal, we reversed the gang enhancement findings and firearm enhancements that were dependent on those findings.  We otherwise upheld defendant's convictions and judgment.  (*Cornejo, supra*, 3 Cal.App.5th at pp. 43-44, 75.)  Defendant's ultimate sentence after appeal was for 20 years to life for the murder plus an aggregate determinate term of 10 years.

B.      *The Section 1170.95 Petition*

On February 28, 2019, defendant's attorney filed a petition for resentencing pursuant to former section 1170.95 arguing he had been convicted of second degree murder under a natural and probable consequences theory, and thus, was eligible for relief.  The People opposed this petition, arguing in pertinent part, that defendant had been tried as a direct aider and abettor, and therefore, was ineligible for relief.

In reply, defendant argued he had been tried and the jury instructed on a natural and probable consequences theory.  He reasoned the amended information charged murder and attempted murder occurring by drive-by shooting, that he had been driving the car that the shots had been fired from, and the jury had been instructed on "implied

3

malice," which required the jury to find "[t]he natural and probable consequences of the act were dangerous to human life."  (Italics & boldface omitted.)[2]  Defendant argued he could not now be convicted of second degree murder because he was not the actual killer, did not act with intent to kill, and did not act with reckless indifference to human life.  He further argued that Senate Bill 1437 applied to attempted murder, and he should be granted relief as to the four attempted murder counts.

## C.    The Trial Court's Ruling

On May 21, 2020, the trial court denied defendant's petition without issuing an order to show cause and without holding an evidentiary hearing.  The court's written ruling explained:

"Penal Code [section] 1170.95[, subdivision ](a) provides that '[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated . . . .'  Defendant Jesse Cornejo is not such a person, as defendant Jesse Cornejo's jury was not instructed on either theory with regard to murder or attempted murder.

"Rather, defendant Jesse Cornejo's jury was instructed with:  (1) CALCRIM No. 401, on direct aiding and abetting, (2) CALCRIM No. 520 on malice aforethought murder, (3) CALCRIM No. 521 on first degree murder (of which defendant Jesse Cornejo was found not guilty), (4) CALCRIM No. 525 on the punishment provision of Penal Code [section] 190[, subdivision ](d) for a drive-by shooting committed with intent to inflict great bodily injury, for consideration after already being found guilty of second

---

[2]  As recounted in defendant's reply brief, CALCRIM No. 520 stated:  "The defendant acted with implied malice if:  [¶]  (1) He intentionally committed an act;  [¶]  (2) The natural and probable consequences of the act were dangerous to human life;  [¶]  (3) At the time he acted, he knew his act was dangerous to human life;  [¶]  AND  [¶]  (4) He deliberately acted with conscious disregard for human life."  (Italics & boldface omitted.)

4

degree murder, and (5) CALCRIM No. 600 on attempted murder, as requiring a direct act toward the killing and intent to kill that person.  None of these instructions contained language pertaining either to felony murder or the natural and probable consequences doctrine of accomplice liability.[3]

"Defendant Jesse Cornejo's counsel nevertheless argues that the jury was instructed on the natural and probable consequences doctrine in the CALCRIM No. 520 implied malice jury instruction that was given.

"Counsel is mistaken.  [Senate Bill] 1437 did not abrogate implied malice, the jury instruction for which does contain the words 'natural and probable consequence' but in a different context from that of the natural and probable consequences doctrine of accomplice liability.  Rather, [Senate Bill] 1437 abrogated only the theory of accomplice liability that is based on the defendant intending to aid and abet an accomplice in the commission of a lesser offense, the natural and probable consequence of which would be murder in the specific case.  Defendant Jesse Cornejo's jury was not instructed on the latter.  [Senate Bill] 1437 did not amend the language now embodied in Penal Code [section] 188[, subdivision ](a)(2), which continues to define 'implied malice' as being 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.'  As that language was not amended, the case law that has interpreted those words has not been amended, thus the continuing validity of CALCRIM No. 520 has not been affected by [Senate Bill] 1437.

"With regard to defendant Jesse Cornejo's attempted murder convictions, as the jury also was not instructed on either felony murder (which is inapplicable to attempted murder) or the natural and probable consequences doctrine of accomplice liability, he

---

[3] We grant respondent's request to incorporate the appellate record in defendant's previous appeal, case No. C072053.  Our review of the jury instructions in that record confirms the accuracy of the trial court's representations concerning those instructions.

similarly is not a person to whom Penal Code [section] 1170.95 applies. As such, the court need not decide whether any defendant convicted of attempted murder is categorically precluded from seeking relief under Penal Code [section] 1170.95."

Defendant timely appealed.

## DISCUSSION

### A. *Background*

In 2018, the Legislature enacted Senate Bill 1437 which amended section 188 to require proof of personal malice aforethought in all murder convictions (§ 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2), except in cases prosecuted under the felony murder rule. (§§ 188, subd. (a)(3), 189, subd. (e).) "The effect of the new law was to eliminate liability for murder under the natural and probable consequences doctrine." (*People v. Offley* (2020) 48 Cal.App.5th 588, 594; see also *People v. Gentile* (2020) 10 Cal.5th 830, 838-839 [caselaw and Sen. Bill 1437 have eliminated the natural and probable consequence's applicability to murder in the first and second degree].) The criminal liability of direct aiders and abettors did not change under Senate Bill 1437. (*Offley,* at pp. 595-596.) The legislation also enacted section 1170.95, which provides a mechanism allowing a petitioner to request vacatur of a murder conviction where that petitioner could not have been convicted of murder under the new law. It further provides for resentencing of those petitioners who were so convicted. (Stats. 2018, ch. 1015, § 4; *Gentile*, at p. 843.)

At the time the trial court considered defendant's petition, section 1170.95 did not expressly permit a petition for resentencing on convictions for attempted murder. (§ 1170.95, former subd. (a).) However, Senate Bill 775 amended subdivision (a) of section 1170.95 to read, in pertinent part: "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts . . . ." (Stats. 2021,

6

ch. 551, § 2.)  Senate Bill 775 became effective January 1, 2022 (Cal. Const., art. IV, § 8).  Thus, certain petitioners convicted of attempted murder are now eligible to seek relief under section 1170.95.

Section 1170.95, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief.  (*People v. Lewis* (2021) 11 Cal.5th 952, 960-962 (*Lewis*).)  First, the trial court determines whether the petition is facially sufficient under section 1170.95, subdivision (b).  (*Lewis*, at p. 960.)  If the petition is facially sufficient, then the trial court moves on to subdivision (c), appointing counsel (if requested) and following the briefing schedule set out in the statute.  (*Lewis*, at p. 966.)  Following the completion of this briefing, the trial court holds a hearing and determines whether the petitioner has made a prima facie showing he or she is entitled to relief.  (*Ibid.*; § 1170.95, subd. (c).)

As the Supreme Court explained, "[w]hile the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citation.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citation.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." '  [Citation.]"  (*Lewis, supra*, 11 Cal.5th at p. 971.)

"To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an

evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)" (*People v. Porter* (2022) 73 Cal.App.5th 644, 651.)

B.      *Analysis*

Here, the trial court denied defendant's petition at the section 1170.95, subdivision (c) stage after determining that defendant was not tried under a theory eligible for relief under Senate Bill 1437 and former section 1170.95. Rather, defendant's convictions for murder and attempted murder were premised upon direct aider and abettor liability.

Defendant argues this was error because the jury was instructed with the phrase "natural and probable consequences" in the jury instruction pertaining to implied malice, and thus, he argues the jury was instructed on the natural and probable consequences doctrine. This argument is not persuasive because it conflates implied malice (a direct liability theory) with indirect liability (formerly available via the natural and probable consequences doctrine).

By its terms, only "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" is eligible for relief under section 1170.95. (§ 1170.95, subd. (a).) Here, the record of conviction, specifically the jury instructions, show that the jury was not instructed on the felony-murder or natural and probable consequences theory, nor any other theory under which malice might be imputed based solely on defendant's participation in a crime. Rather, the jury instructions show that defendant was prosecuted and convicted of second degree murder based on a theory of *implied malice.*

Direct, but implied malice and indirect liability according to the natural and probable consequences doctrine are distinct concepts, requiring different mental states. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056-1057.) "The California Supreme Court has made clear that a 'direct' aider and abettor must—at a minimum—share in the

8

mens rea of the actual perpetrator, whereas an 'indirect' aider and abettor (i.e., one whose liability is premised on the natural and probable consequences doctrine) need only intend to aid a different, less serious 'target' crime, than the consequent crime." (*Id.* at p. 1057, citing *People v. Chiu* (2014) 59 Cal.4th 155, 158-159, 161-162, 171-172.) As we have explained, "Senate Bill No. 1437 changed the circumstances under which a person could be convicted of murder *without a showing of malice*,[4] but it did not exclude from liability persons convicted of murder for acting with *implied malice*." (*Soto*, at p. 1057, italics added.)

Accordingly, while we acknowledge that the implied malice instruction used the words "natural and probable consequence," this use does not afford individuals convicted under a direct implied malice theory, the ability to obtain relief under section 1170.95. (*People v. Soto*, *supra*, 51 Cal.App.5th at pp. 1050, 1055-1059 [jury instructions proved as a matter of law that the getaway driver (defendant) was ineligible to obtain relief for his second degree murder conviction under § 1170.95 where he was convicted on a direct, implied malice theory].) Given the instructions in this matter, the jury necessarily found defendant was a direct aider and abettor to second degree murder, who had acted with *implied malice*. Accordingly, defendant is ineligible for relief as a matter of law. (*Soto,* at p. 1057.)

Under these circumstances, the trial court's failure to hold a hearing as required under amended section 1170.95, subdivision (c) is harmless, as defendant cannot show it is reasonably probable that he would have obtained an order to show cause in the absence

---

**4** Section 188 now directs that for purposes of murder, "malice may be express or implied." (§ 188, subd. (a).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188, subd. (a)(2).) Except as stated in the codification of the felony murder rule, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be *imputed* to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), italics added.)

of the trial court's error.  (*Lewis, supra*, 11 Cal.5th at pp. 972-974; *Porter*, *supra*, 73 Cal.App.5th at p. 651.)  And because defendant was prosecuted as a direct aider and abettor on the attempted murder counts, we further find defendant's attempted murder convictions are ineligible for relief regardless of the passage of Senate Bill 775.  As with defendant's murder conviction, the record forecloses defendant's ability to show that he is eligible for relief under amended section 1170.95, and thus, any error in not holding a hearing prior to denying defendant's petition as required by amended section 1170.95 was harmless.  (*Lewis,* at pp. 972-974; *Porter*, at p. 651.)

**DISPOSITION**

The judgment is affirmed.


                                        /s/
                                        HOCH, Acting P. J.


We concur:



  /s/
KRAUSE, J.



  /s/
MURRAY, J.*

_____

\* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10